DAVID F. NESS
Assistant Federal Defender
Federal Defenders of Montana
104 2nd Street South, Suite 301
Great Falls, Montana 59401
david_ness@fd.org
Phone: (406) 727-5328
Fax: (406) 727-4329
        Attorney for Defendant/Movant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No. CR-03-17-BLG-SPW** |
| Plaintiff/Respondent, | **DEFENDANT/MOVANT'S REPLY TO GOVERNMENT'S MOTION TO DISMISS AND RESPONSE TO MOTION UNDER 28 U.S.C. § 2255** |
| vs. | |
| QUINTON BIRDINGROUND, JR., | |
| Defendant/Movant. | |

The Defendant/Movant, Quinton Birdinground, Jr., through Counsel David F. Ness and the Federal Defenders of Montana, respectfully submits the following Reply to the Government's Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.

## I. Introduction

On June 24, 2016, the Defendant/Movant, Quinton Birdinground, Jr., filed a

28 U.S.C. § 2255 motion seeking to vacate and set aside his conviction for possessing a firearm in violation of 18 U.S.C. § 924(c) in light of *Johnson v. United States,* 135 S.Ct. 2551 (2015). (Motion to Vacate, doc. 86). The Government filed a Response on August 4, 2016. (Response, doc. 89).

In its Response, the Government has argued: (1) that Birdinground's claim is barred by the statute of limitations because *Johnson* does not impact § 924(c); (2) that Birdinground is procedurally barred from attacking his conviction in a § 2255 proceeding because his *Johnson* claim could have been raised on direct appeal; and (3) that Birdinground's claim lacks substantive merit because his predicate convictions, second degree murder and assault resulting in serious bodily injury, categorically qualify as a crime of violence; and (4) that § 924(c)'s residual clause is not unconstitutionally vague. These arguments are addressed below.

## II. Argument

### A. Birdinground's § 2255 motion is timely because it was filed within one year of the Supreme Court's decision in *Johnson v. United States.*

The AEDPA sets forth four potential dates for the commencement of its one-year statute of limitations. In this case, only two of those dates are at issue: (1) the date on which the judgment became final and (2) the date on which the right asserted was newly recognized and made retroactively available to cases on collateral review.

*See,* 28 U.S.C. § 2255(f)(1) and (3).  Birdinground maintains that the statute of

limitations began to run on the latter of these two dates, which in his case is June 26,

2015, the day the United States Supreme Court issued its decision in *Johnson v.*

*United States*, 135 S.Ct. 2551 (2015).  *See,* 28 U.S.C. § 2255(f)(3).

The Government, on the other hand, has argued that the statute of limitations

began to run on the first date – the day on which Birdinground's conviction became

final which, according to its calculation, was sometime in March of 2004.  *See,* 28

U.S.C. § 2255(f)(1).  It maintains that § 2255(f)(3) does not apply in this case because

"*Johnson* does not involve 18 U.S.C. § 924(c)."  (Response, doc. 89 at 5).  Although

it generally concedes that *Johnson* announced a "new rule" that is retroactive to cases

on collateral review,[1] it urges a narrow application of its holding.  It maintains that

an extension of *Johnson* to cover § 924(c) would require a "new rule" that can only

be announced by the Supreme Court.  The Government's argument rests on a

misunderstanding of the retroactivity principles underlying § 2255(f)(3).

In determining whether a Supreme Court decision announced a "new rule" that

applies retroactively for purposes of § 2255(f)(3), courts apply the retroactivity

analysis enunciated in *Teague v. Lane*, 489 U.S. 288 (1989), the case that produced

---

[1] *See, Welch v. United States*, 136 S.Ct. 1257, 1263 (2016)("Because the United States, as respondent, agrees with Welch that *Johnson* is retroactive, the Court appointed . . . *amicus curiae* in support of the judgment of the Court of Appeals.").

"the framework for determining whether a new rule applies to cases on collateral review." *Id.* at 1264. In *Teague,* the Court held, as general matter, "that new constitutional rules of criminal procedure" are not applicable to cases on collateral review. *Teague,* 489 U.S. at 310. *Teague*'s rule does not, however, apply to two categories of decisions – those that announce "new substantive rules" and those that announce new "watershed rules of criminal procedure." *Id.* at 307, 311-313.[2]

"A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004). Substantive rules include "decisions that narrow the scope of a criminal statute by interpreting its terms, as well as determinations that place particular conduct or persons covered by the statute beyond the State's power to punish. *Schriro,* 542 U.S. at 351-52; *Montgomery v. Louisiana,* 136 S.Ct. 718, 730 (2016).

"Procedural rules, by contrast, are designed to enhance the accuracy of a conviction or sentence by regulating 'the manner of determining the defendant's culpability.'" *Montgomery,* 136 U.S. at 730. "They do not produce a class of persons convicted of conduct the law does not make criminal" or "necessarily carry a significant risk that a defendant faces a punishment that the law cannot impose upon

---

[2] Birdinground concedes that *Johnson* did not produce a new "watershed rule of criminal procedure." *See, Welch v. United States,* 136 S.Ct. 1257, 1264 (2016).

4

him." *Welch*, 136 U.S. at 1265; *Montgomery*, 136 U.S. at 724.

In *Welch v. United States*, 136 S.Ct. 1257 (2016), the Supreme Court relied on *Teague*'s framework to support its conclusion that *Johnson* announced a "substantive rule that has retroactive effect in cases on collateral review." *Id.* at 1268.  In coming to this conclusion, the Court explained that *Johnson* is not a procedural decision because "it has nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the Armed Career Criminal Act" – it "affected the reach of the underlying statute rather than the judicial procedures by which the statute is applied." *Id.* at 1265; *see also, Bousley v. United States*, 523 U.S. 614, 620 (1998)(holding that the rule established in *Bailey v. United States,* 516 U.S. 137 (1995), was substantive because it limited the reach of § 924(c)); *Schriro*, 542 U.S. at 354 ("A decision that modifies the elements of an offense is normally substantive rather procedural.").

The Government concedes, as it must, what *Welch* confirmed – that *Johnson* announced a new rule that is retroactive to cases on collateral review.  It maintains, however, that Birdinground's § 2255 motion is untimely because the rule in *Johnson* does not extend to § 924(c).  The Government's argument is premised on three misconceptions – (1) that because *Johnson* did not specifically discuss § 924(c), its holding cannot be logically construed to apply to that statute's residual clause; (2)

that extending *Johnson'*s holding to § 924(c) would create a new rule of constitutional law; and (3) that only the Supreme Court can decide whether the rule in *Johnson* applies retroactively to § 924(c).  These claims, like the Government's ultimate argument, are based on a misunderstanding of federal law.

With regard to the first claim, it cannot be credibly argued that *Johnson* is limited to ACCA cases.  The Government, itself, has conceded that *Johnson* applies to the sentencing guidelines' residual clause. *See, United States v. Torres*, ___ F.3d ___, 2016 WL 3770517 at *9 (9th Cir., July 14, 2016)(accepting Government's concession "that *Johnson*'s holding nullifies § 4B1.2(a)(2)'s identically worded residual clause").  It has also expressed the belief that the reasoning in *Johnson* applies outside the ACCA context to other federal statutes, including 18 U.S.C. § 924(c)(3)(B).[3]  Most importantly, however, the Ninth Circuit, in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), has extended *Johnson*'s reasoning to § 16(b)'s residual clause, which is identical to that in § 924(c).  *See also, United States v. Hernandez-Lara*, 817 F.3d 651 (9th Cir. 2016).  As discussed more fully below, *Dimaya* compels the conclusion that *Johnson* applies to § 924(c)(3)(B)'s residual clause.  *See, e.g., United States v. Bell*, 2016 WL 344749 (N.D. Cal. 2016); *United States v. Lattanaphom*,  2016 WL 393545 (E.D. Cal. 2016); *United States v. Luong,* 2016 WL

---

[3] *See,* Supplemental Brief for the United States at 22-23, *Johnson,* No. 13-7120.

1588495 (E.D. Cal. 2016);  *United States v. Edmundson*, 2015 WL 9311983 (D. Md. 2016);  *United States v. Baires-Reyes*, 2016 WL 3163049 (N.D. Cal. 2016).

The Government's second claim is not supported by Ninth Circuit or Supreme Court case law.  It is true that, on its face, *Johnson* dealt only with ACCA's residual clause.  But virtually everyone – including the Government – immediately understood that its holding extended to other statutes.  *See, Dimaya,* 803 F.3d at 1115 (*Johnson*'s reasoning applies with equal force to the similar statutory reasoning and identical mode of analysis used to define a crime of violence for purposes of the INA").

*Johnson* held ACCA's residual clause to be unconstitutionally vague because it combined the indeterminate inquiry of "how to measure the risk posed by a crime" in the ordinary case with "indeterminacy about how much it takes for the crime to qualify as a violent felony."  *Johnson*, 135 S.Ct. at 2558.   Contrary to the Government's argument, application of this reasoning to similar language contained in other statutes does not implicate *Teague* or create a new principle of constitutional law.  *Tanner v. McDaniel*, 493 F.3d 1135, 1144 (9th Cir. 2007).  *Teague* does not, as the Government would have it, require a § 2255 petitioner to show that "the Supreme Court has decided a case involving identical facts, circumstances and legal issues."  *Butler v. Curry*, 528 F.3d 624, 634 (9th Cir. 2008).  An extension of *Johnson's* general holding – *e.g.,* that the residual clause "is vague in all its applications" –  to §

924(c)(3)(B) would not create a "new rule" of constitutional law. *Stringer v. Black*, 503 U.S. 222, 229 (1992)(holding that the Supreme Court's conclusion that California's death penalty statute was a "weighing" statute, where the definition of "weighing" had been established in a case involving a Mississippi statute, was not a new rule).

The Government's third claim is simply wrong. While it is true that only the Supreme Court can announce a "new rule" for purposes of § 2255(f)(3), any lower court can determine whether a rule is retroactive. *United States v. Swinton*, 333 F.3d 481, 487 (3rd Cir. 2003); *Fisher v. United States*, 285 F.3d 596, 599-600 (7th Cir. 2002); *United States v. Lopez*, 248 F.3d 427, 431 (5th Cir. 2001). In arguing otherwise, the Government has relied on *Dodd v. United States,* 545 U.S. 353 (2005). The decision in *Dodd,* however, said nothing to dispel the conclusion any lower court can determine retroactivity. To the contrary, the majority in *Dodd,* "relied on an assumption made by both parties . . . that the decision to make a new rule retroactive for purposes of [§ 2255(f)(3)] can be made by any lower court." *Dodd*, 545 U.S. at 365, n.4 (Stevens, J., dissenting).[4]

―――――――――――

[4] The Government's argument that disagreement over the reach or the meaning of a Supreme Court decision, dictates a finding that the decision created a new rule is misguided. *Descamps* overruled an *en banc* decision of the Ninth Circuit, *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011)(en banc), but its holding did not establish a new rule. *See, Ezell v. United States*, 778 F.3d 762, 766 (9th Cir.

In sum, the assumptions underlying the Government's statute of limitations argument are invalid because they are based on a misconception of federal law. The rule in *Johnson* is not limited to ACCA's residual clause. It applies "with equal force to the similar statutory language" used to define a crime of violence in § 924(c)(3)(B) and § 16(b). *Johnson*'s natural extension to these statutes would not, as the Government tries to argue, result in a new rule of constitutional law. Nor is there any requirement that the Supreme Court, as opposed to any other court, make the determination as to *Johnson*'s retroactivity.

The statute of limitations on Birdinground's claim commenced on June 26, 2015, the day the Supreme Court announced its decision in *Johnson*. His motion to vacate is therefore timely under 18 U.S.C. § 2255(f)(3).

## B.     The Government's argument that Birdinground's § 2255 motion is procedurally barred lacks merit and should be rejected.

Although a prisoner moving for relief under § 2255 must generally raise his claims on direct appeal, he can receive review of a defaulted claim "by showing cause for the default and prejudice from a violation of federal law." *Trevino v. Thaler*, 133 S.Ct. 1911, 1917 (2013). Birdinground's § 2255 motion is not procedurally defaulted because he can establish both cause and prejudice.

_____

2015)("The Supreme Court did not announce a new rule in Descamps.").

9

### 1.    Birdinground can establish cause to excuse the procedural default of his *Johnson* claim.

In *Reed v. Ross*, 468 U.S. 1 (1984) – a case the Government did not cite – the Supreme Court held that a prisoner can establish "cause" by showing that his claim is "so novel that its legal basis [was] not reasonably available to counsel." *Id.* at 16; *see also*, *Murray v. Carrier*, 477 U.S. 478, 488 (1986)("[W]e note that a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . would constitute cause under this standard."). A claim is not "reasonably available if the Supreme Court decision establishing that claim: (1) explicitly overrules one of the Court's precedents; (2) overturns a longstanding and widespread practice to which the Court has not spoken, "but which a near-unanimous body of lower court authority has expressly approved;" or (3) disapproves a practice that the Court "arguably has sanctioned in prior cases." *Reed*, 468 U.S. at 17 (internal citations omitted).

"By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that [the Supreme Court] has ultimately adopted," and such a case will satisfy the cause requirement. *Id.* This rule protects courts from overly burdensome litigation because otherwise, "counsel on appeal would be obliged to raise and argue every conceivable

constitutional claim, no matter how far fetched, in order to preserve a right for post-conviction relief upon some future, unforeseen development in the law." *Id.* at 16 (internal citation and quotation marks omitted).

Birdinground's claim falls within the second *Reed* category. In March of 2004, when he was sentenced, a vagueness challenge was foreclosed by a "near-unanimous" body of lower court authority that expressly approved the practice of imposing punishment under the residual clause. *Reed*, 468 U.S. at 17. Starting as early as 1990, when the Ninth Circuit issued its decision in *United States v. Sorenson*, 914 F.2d 173, 175 (9th Cir. 1990), the circuit courts consistently and unanimously rejected vagueness challenges to ACCA.[5] After *James* and *Sykes* were decided, federal courts

_____

[5] *Id.* at 175 (Sorenson's "void for vagueness argument fails also because there is no indication that the sentence enhancement provision at issue is so vague that it grants undue discretion to law enforcement officials. The factors for sentence enhancement under 18 U.S.C. § 924(e)(1) are quite specific."); *see also, United States v. Jackson*, 250 F. App'x 926, 930 (11th Cir. 2007) (rejecting vagueness challenge to ACCA); *United States v. Hudson*, 414 F.3d 931, 936 (8th Cir. 2005) ("We have rejected Hudson's contention that § 924(e) is unconstitutionally vague."); *United States v. Childs*, 403 F.3d 970, 972 (8th Cir. 2005) ("In addition, Childs argues that § 924(e) is unconstitutionally vague. We agree with every other circuit that has considered this argument and hold that it has no merit.") (citing *United States v. Presley*, 52 F.3d 64, 68 (4th Cir. 1995); *Sorenson*, 914 F.2d at 175); *United States v. Harkey*, 116 F.3d 1487 (9th Cir. 1997) (citing *Sorenson* in rejecting ACCA vagueness challenge); *Presley*, 52 F.3d at 68 ("We agree with the Ninth Circuit that . . . 'ACCA is not void for vagueness.'") (citing *Sorenson*, 914 F.2d at 175); *United States v. Veasey*, 73 F.3d 363 (6th Cir. 1995) (unpublished) ("This constitutional argument has been rejected by every Circuit that has considered it . . . The ACCA is not unconstitutionally vague.") (internal citation omitted); *United States v. Powell*, 967

continued to reject vagueness challenges.[6]  Some, including the Ninth Circuit, held

that such challenges were foreclosed by *James* and *Sykes*.  *See, United States v.

Martinez*, 771 F.3d 672, 678 (9th Cir. 2014)(rejecting vagueness challenge as

foreclosed by *James*).[7]  *Johnson* overruled this body of case law and, it was not until

---

F.2d 595 (9th Cir. 1992) (unpublished) (citing *Sorenson* to reject claim that "the
ACCA is void for vagueness because it is difficult to determine whether its
prohibitions apply in any particular case"); *United States v. Argo*, 925 F.2d 1133,
1134-35 (9th Cir. 1991) (citing *Sorenson* to reject vagueness argument); *see also
United States v. Cowan*, 696 F.3d 706, 708 (8th Cir. 2012) (rejecting argument that
career offender residual clause was void for vagueness after *Sykes* and *James* and
citing *Childs*, *Presley*, and *Sorenson*); *United States v. Bailey*, 139 F.3d 667, 668 (9th
Cir. 1998) (concluding, when construing a state endangerment offense with language
similar to the § 4B1.2 residual clause, that "[c]ontrary to the appellant's assertion,
Arizona's endangerment statute is not 'vague'.  The language is no broader or less
certain than that in Guideline § 4B1.2").

    [6] *James v. United States*, 550 U.S. 192 (2007)(rejecting vagueness challenge
to residual clause); *Sykes v. United States*, 564 U.S. 1 (2011)(same).

    [7] *See, e.g.*, *Denson v. United States*, 804 F.3d 1339, 1344 (11th Cir. 2015), *cert.
denied*, 136 S. Ct. 1214 (2016) ("In addition, as the government points out in its
supplemental brief, prior to *Johnson*, no court had held the residual clause void for
vagueness, and indeed the Supreme Court had twice held that the residual clause was
not vague."); *United States v. Martin*, 753 F.3d 485, 494 (4th Cir. 2014) (rejecting
vagueness challenge to U.S.S.G. § 2K2.1, holding that argument "ha[d] already been
rejected by this court and by the Supreme Court"); *United States v. Martinez*, 771
F.3d 672, 678 9th Cir. 2014) (rejecting vagueness challenge as foreclosed by *James*);
*United States v. Phillips*, 752 F.3d 1047, 1051-52 (6th Cir. 2014) (vagueness
challenge to ACCA's residual clause foreclosed by *Sykes* and *James*); *United States
v. Van Mead*, 773 F.3d 429, 438 n.7 (2nd Cir. 2014) (rejecting vagueness challenge to
§ 4B1.2, citing *Sykes*); *United States v. Blair*, 734 F.3d 218, 223 n.5 (3rd Cir. 2013)
(challenge to ACCA residual clause foreclosed by *Sykes*); *United State v. Brown*, 734
F.3d 824, 827 (8th Cir. 2013) (rejecting vagueness challenge to ACCA's residual

that decision was filed, that Birdinground's claim became available.

Although the decisions rejecting vagueness challenges dealt mostly with ACCA's residual clause, their reasoning applied equally to § 16(b) and § 924(c)(3)(B). *See, United States v. Bennally*, ___ F.3d ___, 2016 WL 4073316 at *3 (9th Cir., August 1, 2016)("Because the wording of [§ 16(b) and § 924(c)(3)(B)] is virtually identical, we interpret their plain language in the same manner"). The language used in § 16(b) and § 924(c)(3)(B) is not identical to that used in ACCA, but courts had recognized that they used similar terminology. *See, e.g., United States v. Keelan,* 785 F.3d 864, 871 n.7 (11th Cir. 2015); *United States v. Stout,* 706 F.3d 704, 706 (6th Cir. 2013); *United States v. Echeverria-Gomez*, 627 F.3d 971, 976 (5th Cir. 2010). Courts referenced ACCA and career offender holdings in § 16(b) cases and vice versa. *Stout,* 706 F.3d at 706; *Echeverria-Gomez*, 627 F.3d at 976; *United States v. Daye*, 571 F.3d 225, 234 (2nd Cir. 2009); *Jimenez-Gonzalez v. Mukasey*, 548

---

clause); *United States v. Orona*, 724 F.3d 1297, 1310-11 (10th Cir. 2013) (rejecting vagueness challenge to ACCA residual clause); *Harrington v. United States*, 689 F.3d 124, 137 (2nd Cir. 2012) (even if not waived, vagueness challenge foreclosed by *Sykes*); *United States v. Jones*, 689 F.3d 696, 704-05 (7th Cir. 2012) (rejecting vagueness challenge to the ACCA's residual clause under *James* and *Sykes*); *United States v. Hart*, 674 F.3d 33, 41 n.3 (1st Cir. 2012) (rejecting vagueness challenge, citing *James*); *United States v. Mobley*, 687 F.3d 625, 632 n.7 (4th Cir. 2012) (rejecting vagueness challenge to § 4B1.2, citing *Sykes*); *United States v. Gore*, 636 F.2d 728, 742 (5th Cir. 2011) (rejecting vagueness challenge to ACCA's residual clause as foreclosed by *James*).

F.3d 557, 562 (7th Cir. 2008).  Thus, the decisions rejecting vagueness challenges to ACCA's residual clause foreclosed an attack on § 924(c)(3)(B)'s residual clause as well.[8]

In its Response, the Government has argued that Birdinground cannot show that raising a vagueness challenge would have been futile.  In doing so, it has relied on *Bousley v. United States*, 523 U.S. 614, 623 (1998), as well as several decisions from outside the Ninth Circuit.  (Response, doc. 30 at 6-7).  These decisions do not support the Government's argument.

In *Bousley*, for example, the Court held that the petitioner's claim under *Bailey v. United States*, 516 U.S. 137 (1995), which limited the scope of 18 U.S.C. § 924(c), was not sufficiently novel to establish cause because, as the decision in *Bailey* specifically noted, there had been a conflict among the lower courts as to § 924(c)'s interpretation.  *See*, *Bailey*, 516 U.S. at 142 ("The Circuits are in conflict both in the standards they have articulated . . . and the results they have reached . . .")(internal citations omitted).  In light of this conflict, Bousley could not show that his *Bailey* claim was foreclosed by an entrenched nation-wide "near-unanimous" body of case law.  Without such a showing, the Court rejected his argument that his claim was

---

[8] As previously noted, the residual clause in § 924(c)(3)(B) is identical to § 16(b)'s residual clause.

14

"futile" under the second *Reed* principle.

The Government's citation to *Ross v. United States*, 2016 WL 2642272 (E.D. Wis., May 16 2016), is unpersuasive as well. In *Ross*, the court failed to discuss the widespread rejection of residual clause challenges at the time the petitioner pleaded guilty and was sentenced. *See, Ross*, 2016 WL 2642272 at *3. The other cases cited by the Government do nothing more than prove the point that, when Birdinground was sentenced in 2004 – and for years afterward – a vagueness challenge to § 924(c)'s residual clause was foreclosed by a "near-unanimous" body of lower court case law. *See, United States v. Mobley*, 687 F.3d 625, 632 n.7 (4th Cir. 2012)(rejecting residual clause challenge in light of *Sykes*); *United States v. Cowan*, 696 F.3d 706, 708-09 (8th Cir. 2012); *United States v. Tichenor*, 683 F.3d 358, 366-67 (7th Cir. 2012)(rejecting residual clause challenge on the ground that the "sentencing guidelines are not susceptible to vagueness challenges).

Birdinground, unlike the petitioner in *Bousley*, faced a uniform set of judicial opinions that upheld the residual clause from constitutional challenge. The futility of challenging § 924(c)'s residual clause was not about the strength of a particular issue or a tactical decision of whether or not to raise a *Johnson*-type claim. It had to do, rather, with the fact that this claim had been rejected by every federal court to confront the issue. It was only after Birdinground was sentenced and his case became

15

final that the Supreme Court reversed the tide of judicial opinions and found the

residual clause vague.   Under these circumstances, there can be no doubt that

Birdinground has established cause under *Reed.*

> **2.   Birdinground can establish prejudice because he is factually innocent of possessing a firearm in violation of 18 U.S.C. § 924(c).**

To convict a defendant of using a firearm in violation of § 924(c), the

Government must prove the following elements beyond a reasonable doubt: (1) that

the defendant committed a crime of violence and (2) that the defendant used a firearm

during and in relation to that crime of violence.   *See,* Ninth Circuit Model Criminal

Jury Instruction § 8.71 (2010).   Whether a particular offense is a crime of violence is

a question of law that is determined by the court.   *Id.* (citing, *United States v. Amparo*,

68 F.3d 1222, 1226 (9th Cir. 1995)).

Birdinground can establish prejudice to excuse his procedural default because

the predicates supporting his § 924(c) conviction – second degree murder and assault

resulting in serious bodily injury – does not qualify as a crime of violence.   Prejudice

is established when a § 2255 petitioner shows "a reasonable probability" that, but for

the complained of error, "the result of the proceeding would have been different."

*Vansickle v. White,* 166 F.3d 953, 958-59 (9th Cir. 1999).   Birdinground can easily

meet this standard.

### 3. Failure to entertain Birdinground's § 2255 motion will result in a "fundamental miscarriage of justice."

Birdinground can also excuse his procedural default if he can show a "fundamental miscarriage of justice." The Government has argued that he cannot make such a showing because "a defendant cannot be actually innocent of a noncapital sentence." This argument, whatever its merits, fails to recognize that Birdinground's § 2255 motion alleges that he is innocent of the § 924(c) offense itself, not that he is factually innocent of a sentencing enhancement. His claim, therefore, is governed by the standard in *Schlup v. Delo*, 513 U.S. 298 (1995). Under that standard, a petitioner's procedural default can be excused on a showing that the claimed error "probably resulted in the conviction of an innocent person." *Id.* at 327.

Because the residual clause is unconstitutional and because his predicate convictions do not constitute a crime of violence under § 924(c)'s force clause, Birdinground can meet this standard. Hence, his procedural default can be excused under *Schlup*.

### B. Birdinground's convictions do not qualify as a violent felony under § 924(c)'s force clause.

#### 1. The Government's reliance on *United States v. Castleman* is misplaced.

The Government relies on *United States v. Castleman*, 134 S.Ct 1405 (2014),

17

to support its argument that Birdinground's convictions qualify as a crime of violence under § 924(c)'s force clause.  Its argument in this regard fails to recognize that the Supreme Court has announced differing interpretations of the term "physical force."

In the ACCA context, the Court held that the phrase "physical force" means strong physical force – the type of force that  involves the use of "strength or energy; active power; vigor." *Johnson(Curtis) v. United States*, 559 U.S. 133, 139 (2010). It refers to "force exerted by and through concrete bodies" and therefore must be directly applied.  *Id.*  To qualify as a crime of violence under *Johnson(Curtis)*, an offense "must constitute a use or threatened use of violent force, not simply result in physical injury or death." *United States v. Torres-Miguel*, 701 F.3d 165, 168–69 (4th Cir. 2012).

In *Castleman*, the Court held that, in the context of domestic violence, the term "physical force" has a different meaning.  The defendant in *Castleman* had been charged with violating 18 U.S.C. § 922(g)(9), which forbids persons who have been convicted of "a misdemeanor crime of domestic violence" from possessing a firearm. In upholding the defendant's conviction, the Court held that *Johnson(Curtis)*'s definition of physical force did not apply in the domestic violence context. "Misdemeanor crimes of domestic violence," unlike "violent felonies," often involve acts that "one might not characterize as 'violent.'" *Castleman*, 134 S.Ct. at 1411.

18

They typically involve minor physical insults such as "pushing, grabbing, shoving, pinching, biting [and] hair pulling." *Id.* at 1412. Because § 922(g)(9) deals with misdemeanors, rather than "violent felonies" or "crimes of violence," the Court held that "force" in the domestic violence context refers to common-law force, rather than "violent force" as required by *Johnson(Curtis)*.

The logic and language of *Castleman* make clear that the statutory interpretation of § 924(c) and the firearm prohibition in § 922(g)(9) must be undertaken separately. To qualify as a misdemeanor crime of violence, an offense need only require proof that the defendant "engaged in the type of conduct that supports a common-law battery conviction." At common law, the "force used in battery" did not have to be "directly applied" and it could consist of no more than "the slightest offensive touching." *Castleman*, 134 S.Ct. at 1410. In *Johnson(Curtis)*, however, the Court declined to read the common law meaning of "force" into ACCA's definition of "violent felony," because it found it a "comical misfit with the defined term." *Id.*[9]

---

[9]   In urging the Court to apply the *Castleman* standard in this case, the Government has relied on *United States v. Checora*, 155 F.Supp.3d 1192 (D. Utah. 2015). The analysis in *Checora*, however, is inconsistent with Ninth Circuit law. *See, United States v. Garcia-Santana*, 774 F.3d 528, 540 (9th Cir. 2014)(noting that the *Castleman* Court "did not adopt its recent construction of 'physical force'" set forth *Johnson(Curtis)*); *Fisher v. Kealoha*, 49 F.Supp.3d 727, 738 (D.Hawaii, 2014)("*Castleman* distinguished *Johnson*, where the Court considered whether a

Although a common law battery may "'be committed by administering a poison or by infecting with a disease, or even by resort to some intangible substance,' such as a laser beam," *Castleman*, 134 S.Ct. at 1414-15, the *Johnson(Curtis)* concept of force does not encompass such indirect applications. *United States v. McNeal*, 818 F.3d 141, 156 (4th Cir. 2016); *United States v. Torres-Miguel*, 701 P.3d 165, 168-69 (4th Cir. 2012); *United States v. Garcia-Perez*, 779 F.3d 278, 284 (5th Cir. 2015)(crime that can be committed by poison does not require "use of force"); *White v. Lynch*, 807 F.3d 463, 469-70 (1st Cir. 2015); *Villanueva v. United States*, ___ F.Supp. 3d ___, 2016 WL 3248174 at *12 (D. Conn. June 10, 2016). The Government's argument that ACCA's "use of force" requirement can be satisfied by its indirect application rests on a misunderstanding of *Castleman*.

It is true that, in *Castleman*, the Supreme Court noted that "[i]t is impossible to cause bodily injury without applying force in the *common-law* sense." *Castleman*, 134 S.Ct. at 1415. But, it is also true that, in *Johnson(Curtis)*, the Court explicitly and conclusively rejected the contention that the definition of "violent felony" should be read broadly to include the common law meaning of "physical force."

---

battery conviction was a 'violent felony' under the Armed Career Criminal Act."); *United States v. Studhorse,* 2016 WL 4134568 (E.D. Wash., August 2, 2016)("[I]n *Castleman*, and unlike in *Johnson I*, the Court concluded that force . . . should be given its ordinary common law meaning.");

*Johnson(Curtis)*, 559 U.S. at 139-40.  Under common law, "force" can include acts such as poisoning because the "common-law concept of 'force' encompasses even its indirect application."   Force for purposes of § 924(c), however, refers to "force exerted through concrete bodies."  It necessitates the use of physical force against the person of another.  As such it does not include acts, that although harmful, do not involve direct application of physical force.  *Garcia-Perez*, 779 F.3d at 284; *Torres-Miguel*, 701 P.3d at 168-69; *White*, 807 F.3d at 469-70; *Villanueva v. United States*, 2016 WL 3248174 at *12.[10]

In sum, *Castleman*'s definition of force is irrelevant in this case because it can be satisfied by the type of force that supports a common-law battery – a standard that was explicitly rejected in the ACCA context as "a comic misfit."  To constitute a "crime of violence" under § 924(c), an offense must have "as an element the use of [violent] physical force against the person of another."   An offense that can be committed by using only a *de minimis* amount of force or by causing bodily injury indirectly without the use of physical force, can qualify as a "misdemeanor crime of

---

[10] To evade this result, the Government seeks to conflate two distinct concepts. It asks this Court to read the terms "use of force" and "causing injury" synonymously. But if this argument is correct, it is hard to see why § 924(c) ever needed a residual clause.  The force clause would have been enough to capture statutes that criminalize the imposition of bodily injury but do not require the use of force.  *See, Villanueva*, 2016 WL 3248174 at *13.

domestic violence" for purposes of the firearm ban in § 922(g)(9).  But it can never

qualify as a "crime of violence" under § 924(c)'s force clause.

>           **2.      The Government's reliance on *Voisine v. United States* is misplaced.**

In his § 2255 motion, Birdinground relied on *Fernandez-Ruiz v. Gonzalez*, 466

F.3d 1121 (9th Cir. 2006)(en banc) to support his argument that his convictions do not

qualify as a crime of violence under § 924(c)(3)(A)'s force clause.  In its response,

the Government has asserted that *Fernandez-Ruiz* was effectively overruled by the

Supreme Court's decision in *Voisine v. United States,* 136 S.Ct. 2272 (2016).  Its

argument in this regard fails to appreciate that *Fernandez-Ruiz* involved a different

statute than – and, hence, is unaffected by – *Voisine.*

*Fernandez-Ruiz* followed the reasoning of the Supreme Court's decision in

*Leocal v. Ashcroft*, 543 U.S. 1 (2004).  In *Leocal*, the Court held that to qualify as a

crime of violence, an offense must require "a higher degree of intent than negligent

or accidental conduct."  The Court reached this conclusion after parsing the phrase

"use of force against the person or property of another" found in § 16(a).  Giving this

language its "ordinary and natural meaning," the Court concluded that the "use" of

force requires its "active employment."  "While one may, in theory, actively employ

something in an accidental manner, it is much less natural to say that a person actively

employs physical force against another person by accident." *Leocal*, 543 U.S. at 9.

*Leocal* left open the question of whether reckless conduct can satisfy § 16(a)'s "use" requirement. But, in *Fernandez-Ruiz*, the Ninth Circuit confronted this issue and held, as had virtually every other circuit, that it cannot.[11] In coming to this conclusion, the Ninth Circuit observed that, in *Leocal,* the Court "not only endorsed the position that crimes of violence must be volitional but also repeatedly emphasized that such crimes cannot be 'accidental.'" *Fernandez-Ruiz*, 466 F.3d at 1129 (citing *Leocal*, 543 U.S. at 8-10). "Because 'accidental' means '[n]ot having occurred as a result of anyone's purposeful act' and reckless conduct is not purposeful, 'crimes of recklessness cannot be crimes of violence.'" *United States v. Benally,* ___ F.3d ___, 2016 WL 4073316 at *4 (9th Cir., August 1, 2016)(citing, *Fernandez-Ruiz,* 466 F.3d at 1129-30). As *Leocal* explains, "[t]he ordinary meaning of the term [crime of violence], combined with § 16(a)'s emphasis on the use of force against another person . . . suggests a category of violent, active crimes that cannot be said to naturally include" reckless or negligent conduct. *Leocal*, 543 U.S. at 11.

In *Voisine*, the Court granted certiorari to consider a question that was left open in *Castleman* – "whether misdemeanor assault convictions for reckless (as contrasted to knowing or intentional) conduct can trigger [§ 922(g)(9)'s] firearms ban."

---

[11] *See, Castleman,* 134 S.Ct. at 1414 n.8(collecting cases).

23

*Voisine,* 136 S.Ct. at 2278.  The Court answered this question affirmatively, holding

that "[r]eckless assaults, no less than the knowing or intentional ones . . . addressed

in *Castleman,"* fall within "Congress's definition of 'misdemeanor crime of domestic

violence.'"  *Id*.  In arriving at this conclusion, however, the Court was careful to

explain that its decision concerned only the definition of "misdemeanor crime of

domestic violence."  *See,* 18 U.S.C. § 921(a)(33)(A).  It did "not resolve" whether the

force clause in § 16(a) or any other provision, "includes reckless conduct."  *Id.* at

2280 n.4.

The Court's holding *Voisine* was motivated by several practical concerns.  First

among these concerns was the fact that, when § 922(g)(9) was enacted, "34 states

plus the District of Columbia defined misdemeanor [domestic violence] offenses to

include reckless infliction of bodily harm."  *Id.* at 2280.  Had the Court applied the

holding in *Leocal* to its interpretation of § 922(g)(9), it would have rendered that

statute "broadly inoperative in the 35 jurisdictions with assault laws extending to

recklessness."  *Id.*  In fashioning its holding in *Voisine,* the Court was cognizant of

and sought to avoid this outcome.  *Voisine*, 136 S.Ct. at 2281.

The Court was also motivated by the historical backdrop against which the

firearms ban in § 922(g)(9) was enacted.  In 1996, when § 922(g)(9) was passed, "a

substantial majority" of jurisdictions had passed domestic violence laws that were

based on the Model Penal Code's approach to *mens rea*.  The Model Penal Code, unlike the common law, defined misdemeanor assault and battery offenses "to include the reckless infliction of bodily harm."  *Voisine*, 136 S.Ct. at 2280.   In light of this history, the Court saw no reason to believe that Congress gave any "thought to incorporating the common law's treatment of *mens rea* into § 921(a)(33)(A)."  *Id.* at 2280.  "To the contrary, such an approach would have undermined Congress's aim" – "to take guns out of the hands of domestic abusers convicted under the misdemeanor assault laws then in general use in the states" – "by tying the ban on firearms possession not to the laws under which abusers are prosecuted but instead to a legal anachronism."  *Id.* at 2281.

Finally, in enacting § 922(g)(9), Congress sought to bar "domestic abusers convicted of garden-variety assault or battery misdemeanors . . . from owning guns." *Id.* at 2280.  Felons had long been barred from possessing guns.  But "many perpetrators of domestic violence are only convicted of misdemeanors."  *Castleman*, 134 S.Ct. at 1409.  Congress enacted § 922(g)(9), the Court observed, to close this perceived loophole and to prevent gun violence by domestic abusers.  In doing so, Congress "must have known that it was sweeping in some persons who engaged" in

relatively minor and/or merely reckless conduct.   *Voisine*, 136 S.Ct. at 2280.[12]

In sum, the Government's argument that the Supreme Court's construction of § 921(a)(33)(A) should be read to control the meaning of similar language in other statutes, such as § 16(a), § 924(c), and the ACCA, is not well taken.  Its claim that *Voisine* repudiates the Ninth Circuit's decision in *Fernandez-Ruiz* rests on an inapt analogy that conflates two distinct lines of cases.  Contrary to its argument, the firearms ban in § 922(g)(9) "has a distinct, focused and singular purpose" that was not addressed in *Leocal* and *Fernandez-Ruiz*.   *Booker*, 644 F.3d at 18.  Whereas statutes such as § 924(c) "seek to protect society at large from a diffuse risk of injury or fatality" during the commission of "crimes of violence," § 922(g)(9) "addresses an acute risk to an identifiable class of victims – those in relationship with a perpetrator of domestic violence."  *Id.* at 21.  "The threshold at which § 922(g)(9) will be triggered (misdemeanor crimes) is, accordingly, lower than the felony threshold set for" § 924(c).  *Id.*

---

[12] *See also, United States v. Booker,* 644 F.3d 12, 19 (1st Cir. 2011)(citing, 142 Cong. Rec. S11872–01, S11877 (daily ed. Sept. 30, 1996, statement of Sen. Lautenberg)("In the course of drafting § 921(a)(33)(A), Congress expressly rejected § 16's definition of 'crime of violence,' adopting a definition of 'misdemeanor crime of violence' that was, according to the sponsor of the Lautenberg Amendment, 'probably broader' than the definition of 'crime of violence' in § 16.").

3. **Birdinground's convictions do not qualify as a violent felony under ACCA's force clause.**

    a. **Second degree murder does not qualify as a crime of violence under § 924(c)'s force clause.**

As the Government candidly acknowledges, a conviction for second degree murder does not require proof of an *intentional* use of force against the person or property of another. A conviction can be sustained on proof that the defendant acted with reckless indifference. *United States v. Flemming*, 739 F.2d 945, 948 (4th Cir. 1984) (affirming second-degree murder conviction for a defendant who killed another motorist during a drunken high-speed crash); *United States v. Tan*, 254 F.3d 1204, 120 (10th Cir. 2006) (involving a car accident; conviction reversed on other grounds). Therefore, second degree murder does not qualify as a crime of violence under 18 U.S.C. § 924(c)(3)(a)'s force clause. *Quijada-Aguilar*, 799 F.3d at 1306 (quoting *United States v. Gomez-Leon*, 545 F.3d 777, 787 (9th Cir. 2008); *Fernandez-Ruiz* , 466 F.3d at 1132 (9th Cir. 2006)(en banc).

    b. **Assault resulting in serious bodily injury does not qualify as a crime of violence under 924(c)'s force clause.**

A conviction for assault resulting in serious bodily injury under 18 U.S.C. § 113(a)(6) cannot be classified as a crime of violence because it may be based on

reckless conduct.  *United States v. McInnis,* 976 F.2d 1226, 1234 (9th Cir. 1992);

*United States v. Loera*, 923 F.2d 725, 728 (9th Cir. 1991); *United States v. Juvenile*

*Male,* 930 F.2d 727, 728 (9th Cir. 1991).  And, as stated above, the Ninth Circuit,

following the lead of the Supreme Court in *Leocal*, has held that offenses committed

through the reckless use of force do not constitute a crime of violence.  *Fernandez-*

*Ruiz,* 466 F.3d at 1132; *Quijada-Aguilar*, 799 F.3d at 1306.  Thus, because a violation

of § 113(a)(6) does not invariably involve the intentional use or threatened use of

physical force it cannot qualify as a § 924(c) predicate.[13]

### 4.   The residual clause in § 924(c)(3)(B) is unconstitutionally vague.

In *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), the Ninth Circuit held that

the residual clause in 18 U.S.C. § 16(b) is unconstitutionally vague because it suffers

from the same infirmities as ACCA's residual clause.  *See also, United States v.*

*Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015); *Shuti v. Lynch*, ___ F.3d ___, 2016 WL

3632539 (6th Cir., July 7, 2016).  The Government concedes that the identical residual

---

[13] As the Government pointed out in footnote one of its response, Birdinground mistakenly asserted in his § 2255 motion that he was convicted of assault with intent to commit murder, rather than assault resulting in serious bodily injury.  In a favor to Mr. Birdinground, the Government noted the mistake and went on to argue that assault resulting in serious bodily injury is a crime of violence.  In light of the Government's courtesy and the fact that Birdinground's argument is somewhat different than that asserted in his § 2255 motion, Birdinground has no objection if the Government believes it necessary to supplement its response.

clause language is used in § 16(b) and § 924(c)(3)(B).  But it claims that § 924(c)(3)(B) is not unconstitutionally vague because: (1) the language in § 924(c)'s residual clause is "narrower than the language used in ACCA's residual clause;" (2) section 924(c)(3)(B) omits ACCA's list of enumerated offenses; and, (3) the Supreme Court has not "repeatedly" failed to construe § 924(c)(3)(B) in a "principled and objective" way.  The *Dimaya* court considered and rejected most, if not all, of these arguments, which apply equally to § 16(b).

The Government argues that the language in § 924(c)'s residual clause is "narrower" than that contained in ACCA because § 924(c) focuses on the risk that "force" will be used in committing the offense rather than the "general risk that injury might arise from anything done by the defendant."  (Response, doc. 89 at 20). This distinction, the Government claims, renders the risk analysis somehow less uncertain.

This same argument can be made with respect to § 16(b), however.  Both § 924(c) and § 16(b) define a "crime of violence" as a crime that "by its nature, involves a substantial risk that physical force . . .  may be used in the course of committing the offense."  Whether or not this language is narrower than that used in ACCA, one is hard pressed to see how it makes a meaningful difference – a marginally narrow abstraction is an abstraction all the same.  As the Supreme Court pointed out in *Johnson,* assessing the level of risk in an ordinary burglary is an

entirely speculative enterprise.  It is just as easy to imagine a burglar who invades an unoccupied home during the day and flees after hearing someone approaching as it is to imagine one who invades an occupied home at night.  *Johnson*, 135 S.Ct. 2558. As with ACCA, § 16(b)'s and § 924(c)'s residual clause fails to provide a reliable way to choose between these competing accounts regardless of their focus on the risk that force may be used.  *Id.*  In both cases, a judge is required to "imagine how the idealized ordinary case of the crime subsequently plays out."  *Id.* at 2557-58.

The Government further argues that "the nexus between 'the crime of violence' and the presence of a firearm" narrows § 924(c)'s residual clause in a manner that "provides defendants with additional notice of circumstances that will and will not qualify a crime of violence."  (Response, doc. 89, at 21).  This argument – whatever its validity – is largely beside the point.  The vagueness doctrine exists not only to provide notice to individuals, but also to prevent arbitrary enforcement of laws by the police and the judiciary.  The Supreme Court's decision in *Johnson* was motivated more by the latter of these concerns than the former.  In striking down ACCA's residual clause, the Court pointed to its own "repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause."  *Johnson*, 135 S.Ct. at 2562.  ACCA's residual clause clearly does not provide adequate notice but, in declaring it unconstitutional, the Court was focused more on the "unavoidable

uncertainty and arbitrariness of adjudication that it created." *Johnson*, 135 S.Ct. at 2562.

The Government goes on to argue that § 924(c)'s residual clause is narrower than ACCA's because "it has a temporal component that § 924(e) is lacking." (Response, doc. 89 at 20)   This argument ignores the fact that both statutes are subject to the "same mode of analysis."  Both are subject to the categorical approach, which demands that courts look to the elements and nature of the predicate offense rather than its underlying facts.  *United States v. Benally*, ___ F.3d ___, 2016 WL 4073316 at *2 (9th Cir., August 1, 2016).  In either case, courts must decide what a "usual or ordinary violation" entails and then determine how great a risk of injury that "ordinary case" presents.  When applied to § 924(c)'s residual clause, the categorical approach is subject to all the constitutional defects identified in *Johnson.*

The Government's "temporal component" argument is, in any event, foreclosed by Ninth Circuit precedent.  In *United States v. Amaparo*, 68 F.3d 1222, (9th Cir. 1995), the Ninth Circuit rejected the defendant's contention that the question as to whether an offense is a crime of violence "is a question of fact for the jury to decide, and not a question of law for the judge."  *Id.* at 1224.  In doing so, it confirmed that "this circuit has adopted a categorical approach to determining which offenses are included under § 924(c) as 'crimes of violence' obviating the need for fact finding by

31

the jury." *Id.* And while the Government attempts to distinguish § 924(c) and § 16(b) on the basis of when the crime was committed, the Ninth Circuit has also rejected that distinction, noting that "our categorical approach applies regardless of whether we review a current or prior crime." *United States v. Piccolo*, 441 F.3d 1084, 1086-87 (9th Cir. 2006); *see also, Benally,* 2016 WL 4073316 at *2-3. Thus the Government's argument effectively asks this Court to do what it has no authority to do – overturn binding Ninth Circuit precedent.

The Government's argument regarding the four enumerated crimes preceding ACCA's residual clause was addressed in *Dimaya.* The existence of a prefatory list of examples may be confusing, but it was not determinative of the outcome in *Johnson.* The Court's "wide-ranging inquiry" holding was the "more important" aspect of its holding. *Johnson*, 135 S.Ct. at 2557, 2661. At any rate, as the *Dimaya* court recognized, § 924(c)'s residual clause may be more vague than ACCA's *because* it is not preceded by a list of enumerated crime. "[T]hey provide at least some guidance as to the sort of offense Congress intended for the provision to cover." Section 924(c)(3)(B), "by contrast, provides no such guidance at all." *Dimaya,* 803 F.3d at 1118, n.13.

The *Dimaya* court considered the Government's argument that § 924(c), unlike ACCA, has not generated widespread confusion or proven unworkable in practice.

*Dimaya*, 803 F.3d at 1119.  As that court pointed out, this argument ignores the realities of judicial review.  One "can discern very little regarding the merits of an issue from the composition of the Supreme Court's docket." *Id.*  And, in any event, the Government's argument confuses correlation for causation.  The fact that the Supreme Court has decided more ACCA cases than § 924(c) cases does not indicate that it believes the latter statute to be any more capable of consistent application.

The Government's reliance on the cabining footnote in *Dimaya* is also unpersuasive.  *Dimaya* held that § 16(b) is unconstitutionally vague because, like ACCA's residual clause, it "requires courts to (1) measure the risk by an indeterminate standard of a judicially imagined ordinary case, not by real world facts or statutory elements and (2) determine by vague and uncertain standards when a risk is sufficiently substantial." *Dimaya*, 803 F.3d at 1120.  While the *Dimaya* court made clear that its holding should not be taken to extend beyond the scope of the facts before it, that does not mean that the reasoning of its decision cannot be applied elsewhere.  Here, as in *Dimaya*, the "minor distinctions between the text of [ACCA's residual clause] and that of  [§ 924(c)(3)'s residual clause]" fail to "undermine the applicability of *Johnson*'s fundamental holding to this case."  *Id.*

Finally, the Government argues that Birdinground "cannot bring a vagueness challenge because § 924(c)(3)(B) is not unconstitutionally vague as applied to him."

This argument was squarely rejected in both *Johnson* and *Dimaya*. *Johnson*, 135 S.Ct. at 2561-62; *Dimaya*, 803 F.3d at 1119, n.15.

In sum, *Dimaya* compels the conclusion that *Johnson* applies to § 924(c)(3)(B)'s residual clause. *See, United States v. Bell*, 2016 WL 344749 (N.D. Cal. 2016); *United States v. Lattanaphom*,  2016 WL 393545 (E.D. Cal. 2016); *United States v. Luong,* 2016 WL 1588495 (E.D. Cal. 2016);  *United States v. Edmundson*, 2015 WL 9311983 (D. Md. 2016); *United States v. Baires-Reyes*, 2016 WL 3163049 (N.D. Cal. 2016). Although the Government can point to several courts that have declined to extend *Johnson* to § 924(c)(3)'s residual clause, none of those courts are in the Ninth Circuit.  A few have relied on the conclusion that § 924(c)(3)'s residual clause, unlike ACCA's, does not require application of the categorical approach. *See, e.g., United States v. Checora*, ___ F.Supp.3d ___, 2015 WL 9305672 at *9 (D. Utah, December 21, 2015).[14]  But that is not the law in the Ninth Circuit.

---

[14] *See also, United States v. Taylor,* 814 F.3d 340 (6th Cir. 2016).  In *Taylor,* a panel of the Sixth Circuit held that § 924(c)(3)'s residual clause is not unconstitutionally vague.  After *Taylor* was filed, the Sixth Circuit invalidated § 16(b) as unconstitutionally vague, distinguishing *Taylor* on the ground that "[u]nlike [ACCA's and § 16(b)'s residual clauses], which require a categorical approach to stale predicate convictions, 18 U.S.C. § 924(c) is a criminal offense that requires an ultimate determination of guilt beyond a reasonable doubt – by a jury in the same proceeding." *Shuti v. Lynch*, ___ F.3d ___, 2016 WL 36332539 at *8 (6th Cir., July 7, 2016).  The *Taylor* decision, however, does not appear to distinguish § 924(c) in this manner. *See, Taylor*, 814 F.3d at 378 ("It is true that *Johnson* also relied on the fact that ACCA's residual clause, like § 924(c)(3)(B), requires the application of a

## III.  Conclusion

For all the reasons argued both here and in his § 2255 motion, Birdinground's sentence "was imposed in violation of the Constitution or the laws of the United States."  Birdinground is entitled to relief under 28 U.S.C. § 2255 and the sentence imposed in connection with his § 924(c) conviction should be vacated.

RESPECTFULLY SUBMITTED this 25th day of August, 2016.


/s/David F. Ness

---

categorical approach, which requires courts to look at the ordinary case of the predicate crime.").

## CERTIFICATE OF SERVICE - L.R. 5.2(b)

I hereby certify that on August 25, 2016, a copy of the foregoing document was

served on the following persons by the following means:

<u>1, 2</u>      CM-ECF
           Hand Delivery
<u> 3 </u>     Mail
           E-Mail

1.    CLERK, U.S. DISTRICT COURT   3.    Quinton Birdinground, Jr.
                                             Defendant/Movant

2.    LORI HARPER SUEK
      Assistant United States Attorney
      United States Attorney's Office
           Counsel for USA

/s/David F. Ness