IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED

JUL 3 2018

Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 03-017-BLG-SPW |
| Plaintiff/Respondent, | CV 16-102-BLG-SPW |
| vs. | AMENDED ORDER GRANTING § 2255 MOTION AND SETTING RE-SENTENCING |
| QUINTON BIRDINGROUND, JR., | |
| Defendant/Movant. | |

This case comes before the Court on Defendant Birdinground's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Birdinground is a federal prisoner proceeding with counsel.

## I. Background

On February 21, 2003, Birdinground was indicted on one count of second-degree murder, a violation of 18 U.S.C. § 1111(a) (Count 1); one count of assault resulting in serious bodily injury, a violation of 18 U.S.C. § 113(a)(6) (Count 2); and one count of using or carrying and discharging a firearm during and in relation to "Assault and Murder," a violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count 3). Indictment (Doc. 10) at 2.

After a four-day jury trial, Birdinground was convicted on all three counts. Verdict (Doc. 57) at 1, 3. On March 11, 2004, he was sentenced to serve 168

1

months on Count 1, 120 months on Count 2, and a consecutive ten-year term on Count 3, for a total term of 288 months. Minutes (Doc. 64); Judgment (Doc. 65) at 1-2. Birdinground appealed. His conviction was affirmed on December 8, 2004, and became final on March 8, 2005. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Birdinground now seeks relief under the United States Supreme Court's recent decision in *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015).

## II. Merits

Everyone would agree that a person who uses a firearm as a weapon in the course of committing a crime is using or at least threatening to use violence. Birdinground used a firearm as a weapon in committing a crime. But that does not necessarily mean he is guilty of using or carrying a firearm or possessing one in furtherance of a "crime of violence" within the meaning of 18 U.S.C. § 924(c).

### A. "Crime of Violence"

Congress penalizes those who use a firearm to commit federal drug trafficking crimes and federal crimes of violence. Pursuant to 18 USC §924(c)(1)(A), a person who does the following will be penalized:

> any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm[.]

Drug trafficking is not at issue here. The question is whether Birdinground used or carried a firearm or possessed one in furtherance of a "crime of violence." Congress defines the term as follows:

> For purposes of this subsection [§ 924(c)] the term "crime of violence" means an offense that is a felony and—
>
> (A)  has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)  that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

A person who trades a firearm for advice on how to commit tax fraud arguably uses the firearm during and in relation to tax fraud, or at least possesses the firearm in furtherance of tax fraud. *Cf. Watson v. United States*, 552 U.S. 74, 76 (2007); *Smith v. United States*, 508 U.S. 223, 241 (1993). But § 924(c) could not apply to that person, because tax fraud is not a "crime of violence"—that is, it does not have force as an element, and it does not "by its nature" involve a substantial risk that force will be used.

A person who uses a firearm to extort advice on how to commit tax fraud is at least threatening to use violence, and might even use violence, during and in relation to the crime of tax fraud. It would be reasonable to authorize punishment for using a firearm in that manner. Congress once did so. *See* Omnibus Crime

3

Control Act of 1970, Pub. L. No. 91-644, tit. II, § 13, 84 Stat. 1889, 1890 (Jan. 2, 1971) (authorizing additional one- to ten-year penalty for using a firearm to commit or unlawfully carrying a firearm during commission of "any felony" prosecutable in court of the United States); Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, § 1005(a), 98 Stat. 1837, 2138-39 (Oct. 12, 1984) (replacing former § 924(c) with provision imposing five-year sentence for using or carrying a firearm during and in relation to a crime of violence); *see also* Firearms Owners' Protection Act, Pub. L. No. 99-308, § 104(a)(2)(F), 100 Stat. 449 (May 19, 1986) (enacting definition of "crime of violence" currently found in § 924(c)(3)).

But Congress does not do so now. Since 1984, Congress has limited the instances in which a person can be punished for using or carrying a firearm in criminal activity. Section 924(c) could not apply to a person who uses a firearm to extort tax fraud advice, because tax fraud does not meet Congress's definition of a crime of violence.

## B. Categorical Approach

Birdinground committed second-degree murder. The question is whether second-degree murder meets Congress's definition of a "crime of violence."

Here, the key characteristic of Congress's definition of a "crime of violence" is that it applies to categories of crimes, not to the circumstances in which an

individual defendant uses or carries or possesses a firearm. Necessarily so, using a firearm as a weapon to commit a crime would make *any* crime a violent one. But if that was what Congress intended, the phrase "crime of violence" would be superfluous.

Congress uses the identical phrase, "crime of violence," elsewhere in Title 18, *see* § 16. It uses a similar phrase, "violent felony," elsewhere in § 924, at subsection 924(e)(2)(B). As to both § 924(e)(2)(B) and § 16, courts use a "categorical approach" to decide whether a given crime fits Congress' definition. This approach looks "only to the statutory definitions" of the crime, "not to the particular facts underlying" an individual defendant's commission of the crime. *Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also United States v. Sherbondy*, 865 F.2d 996, 1009-10 (9th Cir. 1988) (holding that district court may look only "to the statutes establishing the crimes," not "the individual defendant's specific conduct in committing the . . . offense."), *cited in Taylor*, 495 U.S. at 600.

Both § 924(e)(2)(B) and § 16 have a different function than § 924(c). They are used to characterize an individual defendant's *prior* convictions in order to determine whether his or her criminal record justifies new consequences, such as a higher penalty for a new offense or removal from the United States. Prior convictions may be incurred in at least 51 different jurisdictions and may have widely varying elements and contexts, so they may or may not warrant new

5

consequences. For instance, a person convicted of "extortion" in a jurisdiction where the State must prove the defendant used a firearm as a weapon is not really comparable to a person convicted of "extortion" in a jurisdiction where the State need only prove the defendant contacted other people and threatened to publicly humiliate them unless they paid at least $1,000.

Section 924(c) does not concern prior convictions. The drug trafficking crime or crime of violence supporting a § 924(c) charge must be one "for which the person may be prosecuted in a court of the United States." 18 U.S.C. § 924(c)(1)(A). So the predicate crime will always be a federal crime, not one that will be defined in different jurisdictions. Further, the United States usually prosecutes the predicate crime at the same time as the § 924(c) charge, as it did in this case. As a result, there is an opportunity under § 924(c) to *try* the facts, with all the due process protections of a criminal trial. That opportunity does not exist under § 924(e)(2)(B) or § 16. A court could, under § 924(c), look to facts to decide whether a particular crime was a "crime of violence" in view of the way the defendant committed it. *Cf. United States v. Robinson*, 844 F.3d 137, 144 (3d Cir. 2016) (reasoning that the question is not whether a crime is a crime of violence but whether that crime, if committed while brandishing a firearm, is a crime of violence); *see also* Answer (Doc. 89) at 20-21. Maybe using a firearm as a weapon to compel someone to assist tax fraud *should* qualify as using a firearm during and

6

in relation to a crime of violence under § 924(c)(1)(A).

But whether it should or not is not an open question. The Ninth Circuit has long required courts use the categorical approach to interpret § 924(c)(3) just as they interpret § 924(e)(2)(B) and § 16. *See United States v. Benally*, 843 F.3d 350, 352 (9th Cir. 2016); *United States v. Amparo*, 68 F.3d 1222, 1224-26 (9th Cir. 1995). Section 924(c) only penalizes those who use a firearm to commit *some* crimes. For the penalty to apply, the predicate crime to a § 924(c) conviction must *always* be a "crime of violence," regardless of how a particular defendant might commit the crime, and regardless of whether a firearm is used or carried or possessed in furtherance of it. "A crime cannot categorically be a 'crime of violence' if the statute of conviction punishes any conduct not encompassed by the statutory definition of a 'crime of violence.'" *Benally*, 843 F.3d at 352.

The next question is whether second-degree murder, as defined in federal law, is a "crime of violence," either because it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or because, "by its nature, [it] involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). To answer this question, the Court must use the categorical approach.

7

## C. The Residual Clause, § 924(c)(3)(B)

Second-degree murder always "involves a substantial risk that physical force against the person . . . of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). Causing someone's death even without an intent to kill, and even while trying not to harm or kill, may be second-degree murder. But even when murder is not done intentionally, it always involves strong forces, either in a gross physical sense, as when a drunk driver strikes a pedestrian, or in a minute chemical sense, as in a poisoning. And even if "use" has a specific meaning (more on that below), the residual clause only requires a *substantial risk* that force *may* be used, not that it must be used or attempted or threatened every time.

This is where Birdinground's reliance on *Johnson* comes in. *Johnson* concerned a phrase in § 924(e)(2)(B) (the "Armed Career Criminal Act," or "ACCA"), defining a "violent felony" as a felony that "is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii). *Johnson* held the italicized portion, commonly called the residual clause, unconstitutionally vague.

18 U.S.C. § 16(b) is a similar though not identical clause to § 924(c)(3)(B). Section 16(b) defines a "crime of violence" as a felony "that, *by its nature,*

8

*involves a substantial risk that physical force against the person or property of*
*another may be used in the course of committing the offense.*" On April 17, 2018,
the United States Supreme Court affirmed the Ninth Circuit Court of Appeals in
holding that the residual clause of § 16(b) is unconstitutionally vague under the
rule of *Johnson. See Sessions v. Dimaya*, No. 15-1498, slip op. at 24-25 (U.S. Apr.
17, 2018).

Even after *Dimaya*, § 924(c)(3)(B) might not necessarily be
unconstitutionally vague, but it is in the Ninth Circuit. *Amparo* and *Benally* hold
that § 924(c)(3)(B) is applied by using categorical analysis, and that method lies at
the heart of *Johnson* and *Dimaya*. As the Supreme Court succinctly explained in
*Welch v. United States*, __ U.S. __, 136 S. Ct. 1257 (2016), *Johnson* held that §
924(e)(2)(B)(ii) "failed not because it adopted a 'serious potential risk' standard
but because applying that standard *under the categorical approach* required courts
to assess the hypothetical risk posed by an abstract generic version of the offense."
*Id.* at 1262 (emphasis added). Acknowledging that some crimes might be "clearly
risky," the Court nevertheless held the clause unconstitutionally vague and
unenforceable in any case. *See Johnson*, 135 S. Ct. at 2560-61.

Likewise, in *Dimaya*, the Supreme Court said:

[Section] 16(b) has the same two features that conspired to make
ACCA's residual clause unconstitutionally vague. It too requires a
court to picture the kind of conduct that the crime involves in the
ordinary case, and to judge whether that abstraction presents some

9

> not-well-specified-yet-sufficiently-large degree of risk. The result is
> that § 16(b) produces, just as ACCA's residual clause did, more
> unpredictability and arbitrariness than the Due Process Clause
> tolerates.

*Dimaya*, No. 15-1498, slip op. at 11 (U.S. Apr. 17, 2018) (internal quotation

marks, brackets, and citations omitted).

This Court is not able to imagine how § 924(c)(3)(B), which is textually

identical to § 16(b) and also applied by using categorical analysis, could be

salvaged. At least in the Ninth Circuit at this time, it is unconstitutionally vague.

### D. The Elements Clause, § 924(c)(3)(A)

#### 1. Second-Degree Murder

To date, the Ninth Circuit has not decided whether second-degree murder

under federal law is a "crime of violence" under 18 U.S.C. §§ 924(c), 16(b), or

924(e). The court has, however, held that voluntary manslaughter as defined by

California law is not a "crime of violence" under 18 U.S.C. § 16. *See Quijada-*

*Aguilar v. Lynch*, 799 F.3d 1303, 1306-07 (9th Cir. 2015), *cited in* Mot. § 2255 at

13-14. The court reasoned that the offense could be committed recklessly, rather

than intentionally, *see People v. Lasko*, 999 P.2d 666, 672 (Cal. 2000)), *cited in*

*Quijada-Aguilar*, 799 F.3d at 1306, and that crimes which can be committed

recklessly rather than intentionally do not require proof of the degree of intent

demanded by *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2003), and *Fernandez-Ruiz v.*

*Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006) (en banc).

10

California's definition of voluntary manslaughter is identical to the federal definition. *See* Cal. Penal Code § 192(a); 18 U.S.C. § 1112(a). Like the California offense, voluntary manslaughter under federal law may be committed by a defendant "who killed unintentionally but recklessly with extreme disregard for human life . . . in the heat of passion with adequate provocation." *United States v. Paul*, 37 F.3d 496, 499 n.1 (9th Cir. 1994). In fact, in *Lasko*, the California Supreme Court followed the Ninth Circuit's decision in *Paul* regarding the federal statute on voluntary manslaughter. *See Lasko*, 999 P.2d at 111 (adopting *Paul*, 37 F.3d at 499 n.1).

In addition, the Ninth Circuit has held that "[a]n *accidental* killing may be second degree murder." *United States v. Lesina*, 833 F.2d 156, 160 (9th Cir. 1987) (emphasis added) (citing *Thomas v. United States*, 419 F.2d 1203, 1205 (D.C. Cir. 1969) (per curiam)). "Classic examples of second-degree murder include shooting a gun into a room that the defendant knows to be occupied, playing a game of Russian roulette, and driving a car at very high speeds along a crowded main street." *United States v. Pineda-Doval*, 614 F.3d 1019, 1039 (9th Cir. 2010) (citing authorities). These acts involve conduct "of so dangerous a nature that the possibility of a fatal [event] would suggest itself to any reasonable observer." *Id.* (internal quotation marks and citation omitted). In other words, second-degree murder combines a high degree of *awareness* of the risk, that is, actual

11

consciousness of the risk and disregard of it; a high *degree* of risk that would suggest itself to any reasonable observer; and the highest *kind* of risk the law recognizes, that is, risk of another person's death or serious bodily injury. *See id.* at 1038-39.

But this is the same level of recklessness that can support a conviction for voluntary manslaughter under federal law. As the court reasoned in *Paul*, killing "unintentionally but recklessly with extreme disregard for human life" and also "in the heat of passion with adequate provocation" is "voluntary manslaughter, not murder." *Paul*, 37 F.3d at 499 n.1. The malice otherwise shown by the defendant's intent to kill or by the defendant's recklessness with extreme disregard for human life is negated by heat of passion. *Id.* at 499 (citing *United States v. Browner*, 889 F.2d 549, 552 (5th Cir. 1989)). Ergo, when intent to kill *or recklessness with extreme disregard for human life* is *not* negated by heat of passion, the defendant is guilty of second-degree murder.

Acting recklessly with extreme disregard for human life was not enough to constitute a "crime of violence" in *Quijada-Aguilar* because it is not specific intent to kill. *See Quijada-Aguilar*, 799 F.3d at 1306-07. Before *Quijada-Aguilar*, it might have been possible to draw a distinction among levels of recklessness and to conclude that a higher form of recklessness could be a crime of violence even though a lower form, like the ordinary recklessness at issue in *Fernandez-Ruiz*,

was not. *See, e.g., United States v. Esparza-Herrera*, 557 F.3d 1019, 1023-25 (9th Cir. 2009) (per curiam) (differentiating "simple" from "extreme indifference" recklessness); *Lesina*, 833 F.2d at 159 (distinguishing recklessness appropriate to involuntary manslaughter from recklessness appropriate to second-degree murder). But that prospect is foreclosed by *Quijada-Aguilar*.

Under the rule of *Quijada-Aguilar* as well as *Fernandez-Ruiz*, second-degree murder in violation of 18 U.S.C. § 1111(a) is not a "crime of violence" under § 924(c)(3)(A) because the offense may be proved on a showing of recklessness— albeit with extreme disregard for human life—rather than intent to kill.

The United States asserts that the Supreme Court's decision in *Voisine v. United States*, __ U.S. __, 136 S. Ct. 2272 (2016), "holds that reckless conduct can qualify as a crime of violence." Answer (Doc. 89) at 14. The United States' answer does not cite either *Fernandez-Ruiz* or *Quijada-Aguilar*.

Generally, a published decision of the Ninth Circuit Court of Appeals is binding authority that "must be followed unless and until overruled by a body competent to do so." *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001). A published decision may lose its precedential force if subsequent binding precedent has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (quoting *Miller v. Gammie*, 335 F.3d 889,

13

900 (9th Cir. 2003) (en banc); *Hart*, 266 F.3d at 1170; *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc)).  In that case, district courts instead "should consider themselves bound by the intervening higher authority and reject the prior opinion . . . as having been effectively overruled." *Gonzalez*, 677 F.3d at 389 n.4.

At least at this time, *Voisine* is not "clearly irreconcilable" with *Fernandez-Ruiz* or *Quijada-Aguilar*.  *Voisine* held that a state statute criminalizing reckless domestic assault could be a "misdemeanor crime of violence."  That term is defined differently than either § 16(a) or § 924(c)(3)(A) define a crime of violence:

> [T]he term "misdemeanor crime of domestic violence" means an offense that—
>
> (i)    is a misdemeanor under Federal, State, or Tribal law; and
>
> (ii)    has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A)(ii).

Notably absent from this definition is a phrase the *Leocal* Court believed to be important:

> The critical aspect of §16(a) is that a crime of violence is one involving the "use ... of physical force *against the person or property of another.*" (Emphasis added.)

*Leocal*, 543 U.S. at 9 (emphasis in *Leocal*).

In holding that force deployed recklessly could constitute a "use . . . of physical force" within the meaning of § 921(a)(33), *Voisine* noted that it did not "resolve whether § 16 includes reckless behavior" because "[c]ourts have sometimes given those two statutory provisions divergent readings." *Voisine*, 136 S. Ct. at 2280 n.4. Its note concluded, "All we say here is that *Leocal*'s exclusion of accidental conduct from a definition hinging on the 'use' of force is in no way inconsistent with our inclusion of reckless conduct in a similarly worded provision." *Id.* A use of force *against the person or property of another*, however, may be taken to require a greater degree of intent than recklessness.

Courts higher than this one may eventually decide that the high degree of recklessness appropriate to voluntary manslaughter or second-degree murder is captured by *Voisine*'s reference to "a deliberate decision to endanger another—no more an 'accident' than if the 'substantial risk' were 'practically certain.'" *Voisine*, 136 S. Ct. at 2279. If so, then *Fernandez-Ruiz* and *Quijada-Aguilar* will be overruled or qualified in a way the circuit has not yet done. This Court must follow what *Fernandez-Ruiz* and *Quijada-Aguilar* say today. Neither is "clearly irreconcilable" with *Voisine*, because *Voisine* construed a different statutory definition of "crime of violence" and did not speak to whether a defendant could "use . . . physical force *against the person or property of another*" by acting with extreme recklessness.

15

The Court can only conclude that in the Ninth Circuit, at this time, second-degree murder in violation of 18 U.S.C. § 1111(a) is not a "crime of violence" under 18 U.S.C. § 924(c)(3)(A).

## 2. Assault Resulting in Serious Bodily Injury

Birdinground was also charged with assault resulting in serious bodily injury, a violation of 18 U.S.C. § 113(a)(6). The statute does not define "assault." Birdinground's jury was instructed that he could be guilty of the offense if he "did assault the victim" and, "as a result, [she] suffered serious bodily injury." *See* Jury Instr. No. 31 (Doc. 58 at 32). The jury was also instructed that "[t]he specific intent to cause serious bodily injury is not required" and that "the assault need not have been committed with a dangerous weapon, or with intent to do bodily harm." Jury Instr. No. 32 (Doc. 58 at 33).[1]

Ninth Circuit case law, though admittedly somewhat dated,[2] holds that assault resulting in serious bodily injury may be committed where the defendant acts volitionally, but the use of force occurs by recklessness or accident. For

---

[1] The model jury instruction at the time of Birdinground's trial was not given. It would have required the United States to prove the defendant "intentionally [[struck] [wounded]] [[*victim*]]." *See* 9th Cir. Crim. Jury Instr. No. 8.7 (2000). Given the discussion in the following paragraphs, it appears that this element would cover less conduct than is recognized by the case law as assault resulting in serious bodily injury.

[2] The District Court in Arizona recently found that "older case law" in the Ninth Circuit "does not change the requirement . . . that there must be an intent to strike or wound." *See United States v. Blatchford*, No. CR 16-8085-001-PCT-GMS, 2017 WL 2480703 at *2 n.5 (D. Ariz. June 7, 2017). But the "older case law" discussed below did not require proof of intent to strike or wound. It did not even require intent to touch or threaten.

instance, in *United States v. Loera*, 923 F.2d 725 (9th Cir. 1991), the court held that a defendant who drove while voluntarily intoxicated, causing an accident that seriously injured one of his passengers, had committed an assault resulting in serious bodily injury. The court pointed out that "[a]t common law a criminal battery was shown if the defendant's conduct was reckless," and "[a] defendant can be convicted of assault under section 113(f)[3] if a battery is proved." *Loera*, 923 F.2d at 728 (affirming conviction for assault resulting in serious bodily injury where defendant drove while intoxicated and caused an accident resulting in serious injury). There was no showing of intent on the defendant's part to commit an assault or to strike or wound anyone. While the defendant must act willfully,[4] the *Loera* court found that "[t]he willful conduct in this case was the operation of a motor vehicle while in a state of voluntary intoxication." *Id.* at 728. The court concluded that "[a] rational trier of fact could have found that Loera's conduct in driving while in a state of intoxication showed a reckless disregard for the safety of

---

[3] Now § 113(a)(6). *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, 2043, Title XVII, § 170201(c) (Sept. 13, 1994).

[4] In *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1085-86 (9th Cir. 2015), the court cited *Loera* in noting that willfulness is incorporated into the definition of the offense of assault resulting in serious bodily injury. In context, the point of the citation was to show that 18 U.S.C. § 113(a)(6) "do[es] *not* punish as aggravated assault[] [an] offense[] committed with *only* extreme indifference recklessness," *id.* at 1085 (emphases added), and, therefore, that a higher level of intent is required. But *Loera* was a drunk driving case prosecuted on a theory of recklessness. To characterize *Loera* as holding that assault resulting in serious bodily injury cannot be proved by recklessness is simply not accurate. Willfulness in *Loera* was not the same thing as intent to assault.

others." As a result, "[t]he same facts which support the finding of involuntary manslaughter in the death of Mrs. Secor, support a finding of assault resulting in serious bodily injury to her son." *Id.*

Similarly, in *United States v. Juvenile Male*, 930 F.2d 727 (9th Cir. 1991), "the juvenile did not intend to shoot the victim." *Juvenile Male*, 930 F.2d at 728. After shouting a warning, he intentionally fired a rifle to scare a group of people. He aimed behind them and accidentally struck someone in another group of people whom he did not see or hear. *Id.* at 728. That, the court held, was sufficient to constitute an assault resulting in serious bodily injury: "Intent to injure is not required for the commission of the offense of battery; criminal negligence or recklessness will suffice." *Id.* at 728-29.

And in *United States v. McInnis*, 976 F.2d 1226, 1234 (9th Cir. 1992), the defendant certainly intended to violate his neighbors' civil rights, but the prosecution was not required to prove he intended to strike, wound, or physically harm them. The defendant fired a rifle toward his neighbors' house. It was three-quarters of a mile away. Fragments of the bullet hit one of the occupants. *See id.* at 1228-29, 1233-34. The court concluded that "McInnis voluntarily shot the rifle into the . . . home with a reckless disregard for the possibility that someone could be injured. Such conduct constitutes assault resulting in serious bodily injury within the meaning of § 113(f)." *Id.* at 1234.

The United States points to cases that do not specifically address the level of intent required by the offenses they address, to say nothing of the level of intent appropriate to assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6). For instance, *United States v. Juvenile Female*, 566 F.3d 943 (9th Cir. 2009), *discussed in* Answer (Doc. 89) at 15-17, arose under 18 U.S.C. § 111(a), which targets anyone who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" an officer "engaged in or on account of the performance of official duties." Notably, the court stated that "[t]o constitute an assault, an action must be either a willful attempt to inflict injury . . . or a threat to inflict injury," but then added, "[t]his court also requires intent to assault." *Juvenile Female*, 566 F.3d at 947 (citing *United States v. Spears*, 631 F.2d 114, 117 n.5 (9th Cir. 1980)). Therefore, the case shows that neither "a willful attempt to inflict injury" nor a "threat to inflict injury" is the same thing as "intent to assault." *Compare, e.g.*, *United States v. Laurico-Yeno*, 590 F.3d 818, 821 (9th Cir. 2010) (citing state statute and case to show offense "required a person willfully to inflict upon another person a traumatic condition, where willfully is a synonym for intentionally"), *cited in* Answer at 16-17. Because prosecutions under § 111 require "intent to assault," they differ from assaults prosecuted under § 113, which, as *Loera*, *Juvenile Male*, and *McInnis* show, do not require intent to assault. The United States emphasizes that a defendant who causes injury

"necessarily must have committed an act of force in causing the injury." Answer at 15 (quoting *Juvenile Female*, 566 F.3d at 948). But "committed" is not "intentionally committed." Intent is the question.

*United States v. Lawrence*, 627 F.3d 1281 (9th Cir. 2010), *cited in* Answer at 16, demonstrates the difference between assault generally and a crime having intent to assault as an element. There, the court considered whether an intentional assault under Washington law, in which the defendant recklessly inflicted substantial bodily harm, met the intent requirement of *Leocal* and *Fernandez-Ruiz*. Precisely because the state statute "require[d] an *intentional* assault," *Lawrence*, 627 F.3d at 1285 (emphasis in *Lawrence*), the court held that a "requirement of intentional criminal assault, coupled with a requirement of substantial bodily harm," met the elements of 18 U.S.C. § 924(e)(2)(B)(i). Relying on *Lawrence* begs the question presented here, which is whether an assault resulting in serious bodily injury must be committed intentionally or may instead be committed recklessly.

None of the Ninth Circuit cases holding that assault resulting in serious bodily injury may be committed recklessly—*Loera*, *Juvenile Male*, and *McInnis*— has been questioned or criticized for their discussion of the level of intent appropriate to the offense. Thus, for the same reason that second-degree murder as defined by 18 U.S.C. § 1111(a) is not a crime of violence, assault resulting in

serious bodily injury as defined by 18 U.S.C. § 113(a)(6) is not one either.

## E. Conclusion

Neither second-degree murder nor assault resulting in serious bodily injury is a crime of violence under 18 U.S.C. § 924(c)(3)(A). Section 924(c)(3)(B) is unconstitutionally vague under the rule of *Johnson* and *Dimaya*. Birdinground used a firearm, but not "during and in relation to a crime of violence." His conviction under § 924(c) is invalid.

## III. Procedural Defenses

Unless the United States is correct that Birdinground's motion is barred on procedural grounds, he is entitled to relief.

The United States asserts that Birdinground's motion is not timely because 28 U.S.C. § 2255(f)(1) applies and § 2255(f)(3) does not. *See* Answer (Doc. 89) at 4-5. It also asserts that Birdinground's motion is procedurally barred because he did not appeal his conviction under § 924(c). *Id.* at 5-8.

## A. Statute of Limitations

The statute of limitations, 28 U.S.C. § 2255(f), provides:

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1)     the date on which the judgment of conviction becomes final; [or]

. . .

(3)     the date on which the right asserted was initially recognized by

21

> the Supreme Court, if that right has been newly recognized by
> the Supreme Court and made retroactively applicable to cases
> on collateral review[.]

The United States argues that *Johnson* did not mention § 924(c) and, as a result, Birdinground cannot identify a "right" the Supreme Court has recognized as applicable in his case. *See* Answer at 4-5. In sum, the United States claims Birdinground's motion is too late under § 2255(f)(1) and, if anything, premature under § 2255(f)(3).

For four reasons, the Court disagrees with this interpretation.

### 1. Narrow Scope of the "Right"

First, the United States suggests *Johnson* announces only "a defendant's right not to have his sentence increased under the residual clause of the ACCA," as the Tenth Circuit recently put it. *See United States v. Greer*, 881 F.3d 1241, 1248 (10th Cir. 2018) (holding that *Johnson* did not make timely under § 2255(f)(3) a § 2255 motion seeking relief against sentence imposed under mandatory Guidelines scheme).

But § 2255 does not say anything requiring a federal court to define "the right asserted" so narrowly. It is just as accurate to say that *Johnson* announced a right not to be penalized under a clause that is applied by categorical analysis and "ha[s] both an ordinary-case requirement and an ill-defined risk threshold." *See Dimaya*, No. 15-1498, slip op. at 24. *Dimaya* confirms the latter characterization

of the "right" established by *Johnson*. In that case, the Supreme Court said, "*Johnson* is a straightforward decision, with equally straightforward application here," and "tells us how to resolve this case" under § 16(b) of Title 18. *Dimaya*, No. 15-1498, slip op. at 6, 24. If the right recognized in *Johnson* were confined to ACCA, *Dimaya* would not have been decided as it was.

### 2. Delay

Second, the United States suggests Birdinground must wait to file until the Supreme Court decides a case under § 924(c). But, as Chief Justice Roberts pointed out in his dissent in *Dimaya*, the language of § 16(b) is incorporated or repeated in numerous places in the U.S. Code, "including provisions concerning racketeering, money laundering, domestic violence, using a child to commit a violent crime, and distributing information about the making or use of explosives," as well as § 924(c). *See Dimaya*, No. 15-1498, slip op. at 14-15 (Roberts, Ch. J., dissenting). The United States' argument would seem to require the Supreme Court to decide whether the "right" in *Johnson* applies to each statute *before* a federal defendant could file a § 2255 motion.

Congress intended the statute of limitations "to eliminate delays in the federal habeas review process," *Holland v. Florida*, 560 U.S. 631, 648 (2010), not to create them. Requiring people who "assert" that *Johnson* gives them a right to relief to file within a year of *Johnson*'s issuance serves Congress's purpose much

better. Anyone who asserts that a later case applying *Johnson* confers a right to relief—say, *Dimaya*, or a case specifically addressing § 924(c)—is unlikely to receive the benefit of § 2255(f)(3), because the Court "initially recognized" the "right asserted" in *Johnson*, not in *Dimaya* or a later case.

### 3. Redundancy

Third, the United States' argument needlessly entangles the question of when to file with the decision as to whether the movant actually has the right he asserts: If the filing is timely, it is meritorious, if it lacks merit, it is untimely. This leaves the limitations period with no work to do. Statutes of limitation are not generally redundant with the merits of a claim in this way.[5]

The other provisions of the limitations period, § 2255(f)(1), (2), and (4), are independent of the merits of the claim presented. By simply reading § 2255(f)(3) to require a defendant asserting a new right to relief to file within a year of the Supreme Court's initial decision recognizing the right, § 2255(f)(3) is as easy to apply and as independent of the merits as the other subsections of the limitations period.

---

[5] On the other hand, a motion that lacks merit might still be timely if equitable tolling applies or, in the case of a state prisoner, if statutory tolling applies. *See* 28 U.S.C. § 2244(d)(1)(C), (d)(2). So the "new right" limitations period would be worse than redundant.

### 4. Section 2255(f) vs. Section 2254(d)

Finally, the United States' interpretation seeks to turn a timeliness provision into a restriction on federal courts' responsibility to say what the law is in federal criminal cases on collateral review. Some courts have found that § 2255(f)(3) imports *Teague v. Lane*, 489 U.S. 288 (1989)—which had nothing to do with a statute of limitations—into one subsection of the statute of limitations that now applies to federal prisoners filing § 2255 motions. *See, e.g.*, *Greer*, 881 F.3d at 1246-47.

Section 2255 imposes several restrictions, but it does not go as far as these courts have held. Section 2255(f)(3) *does* limit federal prisoners to asserting new rights that are recognized by the Supreme Court, as opposed to new rights recognized by federal appellate courts or conferred by federal statutes or rules. A provision restricting second or successive motions, § 2255(h)(2), *does* limit federal courts' authority to hear successive motions that are based on new constitutional rules, but it simply requires the Supreme Court to recognize the rule and also say it is retroactive. Section 2255(h) does not say anything that restricts the scope or application of a new constitutional rule.

If Congress wanted to restrict federal courts' authority to award collateral relief to federal prisoners, it knew how to do it. It *did* curtail federal courts' authority to award federal habeas relief to *state* prisoners. 28 U.S.C. § 2254(d)(1)

provides that an application for federal habeas relief "shall not be granted unless" the state courts' decision of the claim was "contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States."

To do the same thing in § 2255, where rights newly recognized by the Supreme Court are concerned, Congress would have said something very simple, for instance, "A motion based on a newly recognized right shall not be granted unless the movant's right to relief is clearly established by the Supreme Court of the United States." As Congress did not say that, § 2255 does not limit collateral relief for federal prisoners to cases where relief is dictated by precedents of the Supreme Court.

### 5. Conclusion

Birdinground asserts that *Johnson* gives him a right to relief. He filed within one year of the date the Supreme Court decided *Johnson*. His § 2255 motion is timely under § 2255(f)(3).

### B. Procedural Default

The United States also asserts that Birdinground's claim is procedurally defaulted because he did not challenge his conviction under 18 U.S.C. § 924(c) on direct appeal. *See* Answer at 5-8. It is correct that a default exists. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

### 1. Excusing the Default

The merits of a defaulted claim cannot be heard unless the defendant's default is excused. Default may be excused if a defendant shows both cause for the default and prejudice resulting from the constitutional violation he asserts. Alternatively, procedural default is excused by actual innocence. *See, e.g., Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley*, 523 U.S. at 622, 624; *Murray v. Carrier*, 477 U.S. 478, 496-97 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

Birdinground meets the "cause" prong of the cause-and-prejudice test. An "objective factor external to the defense,'" *Frost v. Gilbert*, 835 F.3d 883, 888 (9th Cir. 2016) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)), prevented him from challenging the validity of his conviction under 18 U.S.C. § 924(c): the novelty of the Supreme Court's decision in *Johnson*. *See Ross v. Reed*, 468 U.S. 1, 17 (1984); *see also* Order (Doc. 72) at 7-13, *United States v. Mann*, No. CR 09-75-GF-BMM (D. Mont. May 9, 2017).

In addition, Birdinground is actually innocent. Even assuming a defendant "cannot be actually innocent of a non-capital sentence," Answer at 8, § 924(c) is not merely a sentence enhancement but—as the United States says elsewhere—"a *new* offense," *id.* at 22. A defendant who uses or carries a firearm during and in relation to a crime that is neither a "crime of violence" nor a "drug trafficking

crime" has not, in fact, violated § 924(c).

## 2. Prejudice

Both the actual innocence test and the cause-and-prejudice test impose a further requirement. "[W]here the Government has forgone more serious charges in the course of plea bargaining," it "should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered" in view of the plea agreement. *Bousley*, 523 U.S. at 624. And "petitioner's showing of actual innocence must also extend to those charges." *Id.* Likewise, excusing procedural default under the cause and prejudice test requires a demonstration of prejudice.

Here, Birdinground meets those requirements. He was charged with three offenses. A jury found him guilty on all three. No charges were dismissed. Even if the United States could have but did not bring other charges, it cannot do so now. *See Bousley*, 523 U.S. at 624 (holding that defendant need not prove his innocence of "using or carrying" firearm because he was charged only with "using" firearm). And Birdinground was convicted of using a firearm during and in relation to a crime of violence when the crime he committed was not a "crime of violence." The ten-year prison term imposed for that conviction is prejudicial to him. Birdinground's procedural default is excused.

## IV. Conclusion

Under current Ninth Circuit law, the elements of second-degree murder do not fall within the scope of 18 U.S.C. § 924(c)(3)(A). Because § 924(c)(3)(B) uses the same language and is interpreted by the same method as the provisions at issue in *Johnson* and *Dimaya*, it too is unconstitutionally vague. Therefore, Birdinground did not commit a "crime of violence," and his conviction on Count 3 is invalid. Further, his claim was timely filed and is not procedurally barred.

Birdinground's conviction on Count 3 will be vacated and he will be re-sentenced on Counts 1 and 2. *See Dean v. United States*, __ U.S. __, 137 S. Ct. 1170, 1176 (2017); *Greenlaw v. United States*, 554 U.S. 237, 253-54 (2008); *United States v. Handa*, 122 F.3d 690, 691-92 (9th Cir. 1997). The new sentence will be determined by applying 18 U.S.C. § 3553(a) and, except as limited by *Peugh v. United States*, 569 U.S. 530 (2013), the 2016 Sentencing Guidelines Manual.

A certificate of appealability need not be considered because this decision is not adverse to Birdinground. *See* Rule 11(a), Rules Governing § 2255 Proceedings.

Accordingly, IT IS HEREBY ORDERED:

1. Birdinground's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 71) is GRANTED.

2. The conviction on Count 3 is VACATED.

3. Sentencing is set for **Thursday, August 23, 2018** at **9:30 a.m.** in the James F. Battin Courthouse, Billings, Montana.

4. The United States Probation Office shall conduct a supplemental presentence investigation and prepare a new presentence report omitting conviction and sentence on Count 3. Fed. R. Crim. P. 32(c), (d); 18 U.S.C. § 3552(a).

5. The probation officer shall disclose the completed report, except for recommendations of the probation officer, to Defendant, counsel for Defendant, and counsel for the government on or before **July 16, 2018.** The probation officer shall not disclose any recommendation made or to be made to the Court.

6. If restitution is mandatory, the probation officer shall discuss a payment plan with Defendant and shall make recommendations to the Court concerning interest and a payment schedule.

7. Counsel shall attempt in good faith to resolve disputes over any material in the presentence report. Unresolved objections to be relied upon at sentencing shall be presented to the probation officer on or before **July 23, 2018.** U.S.S.G. § 6A1.2. **Any unresolved objections are expected to be included in the presentence report, not in a sentencing memorandum.**

8. The presentence report, in final form, including any unresolved objections, shall be delivered to the Court and the parties on or before **August 6,**

**2018.**

9.  Sentencing memoranda and supporting documents addressing all relevant sentencing issues shall be filed on or before **August 13, 2018.** Absent good cause shown, sentencing memoranda and supporting documents filed after **August 13, 2018** will not be considered in addressing sentencing issues. Failure to timely file sentencing memoranda may result in imposition of sanctions against counsel.

10.  Responses to sentencing memoranda shall be filed on or before **August 20, 2018.**

11.  Reply briefs will not be accepted for filing in sentencing matters.

12.  The Court will resolve objections included in the Addendum to the presentence report at the sentencing hearing in accordance with U.S.S.G. § 6A1.3.

13.  All parties that intend to have witnesses testify at sentencing shall give notice to this Court ten days prior to the sentencing date.

14.  The United States Marshals Service must transport Quinton Birdinground, Jr., BOP # 07696-046, to the District of Montana. Birdinground must be present in Montana and available to consult with counsel at least 30 days before sentencing.

15.  When an Amended Judgment is entered in the criminal case, the clerk shall enter judgment in the civil action, by separate document, in favor of Birdinground and against the United States.

DATED this 2nd day of July, 2018.

SUSAN P. WATTERS
United States District Judge

cc: USPO
    USMS